IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SHIRLEY HILL, as next of kin of
RUDOLPH DOAKS,

    Plaintiff,

v.                                                                           No. 1:08-cv-1307

SUN HEALTHCARE GROUP, INC.,
SUNBRIDGE HEALTHCARE
CORPORATION, and SUNBRIDGE
WEST TENNESSEE, INC.,

    Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS
_____

The Plaintiff, Shirly Hill acting as next of kin of Rudolph Doaks, initiated this civil action against the Defendants, Sun Healthcare Group, Inc., Sunbridge Healthcare Corporation, and Sunbridge West Tennessee, in the Circuit Court of Gibson County, Tennessee. She asserted claims under the Tennessee Medical Malpractice Act ("TMMA"), Tenn. Code Ann. § 29-26-115 *et seq.*; the Tennessee Adult Protection Act ("TAPA"), Tenn. Code Ann. § 71-6-101 *et seq.*, and for common law negligence. The Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332 on the basis of diversity of citizenship. In this Court, they filed a motion to dismiss the complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. After considering the parties' respective arguments, the Court GRANTS in part and DENIES in part the motion.

PLAINTIFF'S ALLEGATIONS

According to the complaint, from December 1996 to June 2008, Doaks was a resident of the Trenton Healthcare Center, which is owned and operated by the Defendants. (Docket Entry ("D.E.") No. 1, Ex. A Compl., at ¶¶ 1, 4-6, 17-18.)  The Complaint alleges the following:

> During her [stay at the Trenton Healthcare Center,] Ms. Doaks improperly experienced several clinical conditions and events, including, but not limited to, pressure sores, infection, unrelenting pain, and multiple violations of her personal dignity as a result of Defendants['] negligence and recklessness.
> . . . .
> As a direct proximate result of the acts and omissions of the Defendants as set forth above, Ms. Doaks suffered mental anguish, extreme physical and mental pain, disfigurement, and suffering and physical injuries which include but are not limited to those described in this Complaint including [] pressures sores severe bruising to [her] head as a result of custodial neglect.  Violations of the TAPA were the proximate cause of Ms. Doaks' injuries.

(Id. at ¶¶ 19, 23.)  The Plaintiff also claimed that the Defendants deviated from the standard of care under both the TMMA and common law negligence by doing the following:

> a       Failing to provide . . . Doaks with a safe environment;
> b.      Failing to properly train and supervise its employees to ensure that . . . Doaks received care, supervision, treatment, and services in accordance with state and federal laws and regulations which reflect the standard of care;
> c.      Failing to properly staff their facility with [a] sufficient number[] of professional and non-professional staff to protect . . . Doaks from injury and neglect;
> d.      Failing to exercise the duty of care owed to . . . Doaks;
> e.      Failing to recognize the dangers associated with residents such as . . . Doaks;
> f.      Failing to properly supervise and care for . . . Doaks;
> g.      Failing to properly budget the facility to provide adequate staffing and supplies;
> h.      Failure of corporate and management agents to properly staff, hire, budget and train the facility's employees to ensure that . . . Doaks was provided the appropriate level of care and supervision that she required; and
> i.      Such other acts or omissions that may be proven through discovery or at trial.
> . . . .
> [j.]    Failing to turn her in a timely manner
> [k.]    Failing to properly train and supervise its employees

(Id. at ¶¶ 26, 29.)

## ANALYSIS

### I. Adequacy of the Complaint

In support of their motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Defendants assert that the Complaint is lacking specific factual contentions. They argue that her pleadings contain only conclusory allegations and do not sufficiently describe the acts, omissions, or conduct that supposedly gave rise to liability.[1] However, a lack of specificity alone does not justify dismissal. Conclusory factual assertions do not automatically render a complaint defective; to hold otherwise would mischaracterize the purpose and nature of the pleadings process. The pleadings need not explain every detail surrounding a claim, "and if the complaint is merely vague or ambiguous, a motion under Fed. R. Civ. P. 12(e) for a more definite statement is the proper avenue rather than under Fed. R. Civ. P. 12(b)(6)." Aldridge v. United States, 282 F. Supp. 2d 802, 803 (W.D. Tenn. 2003); see also Wright v. Sodexho Marriott Servs., 30 Fed. App'x 566, 567 (6th Cir. 2002) (noting that "the defendants, if dissatisfied with the complaint, could have filed a Motion for More Definite Statement under Fed. R. Civ. P. 12(e)"); 5B Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure, § 1356, at p. 370 (3d ed. 2004) ("If the complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, a motion under Rule

---

[1] The Defendants also argue that "Plaintiff's Complaint is so devoid of facts that [they have] no way of ascertaining whether Plaintiff's claims are time-barred because she fails to aver when the acts which supposedly give rise to her claims occurred." (D.E. 3, Mot. to Dismiss, at 4.) Since the Defendant's motion, the parties have agreed to dismiss with prejudice "any claim for care rendered prior to September 17, 2005." (D.E. 9, Order.) As a result, the Court assumes that the events, which allegedly caused the injuries in this case, took place on some date after September 17, 2005.

3

12(b)(6) is not appropriate; the proper remedy is a motion for a more definite statement under Rule 12(e).").

Rule 8(a)(2) instructs that a pleading should be "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief can be granted. In order for an asserted cause of action to survive a motion to dismiss under Rule 12(b)(6), it need not necessarily be pleaded with "detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citations omitted). Factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Id. at 555-56 (citations omitted). The key inquiry is whether the facts in the complaint set out "a claim to relief that is plausible on its face." Id. at 570; see also Hagen v. U-Haul Co. of Tenn., 613 F. Supp. 2d 986 (W.D. Tenn. 2009) (discussing the "plausibility standard").

In Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the United States Supreme Court recently explained that analysis under Rule 12(b)(6) requires a two-pronged approach. First, the reviewing court should determine what allegations within the complaint can be classified as "legal conclusions" and disregard them for purposes of deciding the motion. Id. at 1949. Second, the court should evaluate the remaining portions of the complaint–i.e. the well-pleaded facts–and ascertain whether it gives rise to a "plausible suggestion" of a claim. Id. at 1950. At the second stage, the court "must accept as true all of the factual allegations contained in the

4

complaint," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Erickson v. Pardus, 551 U.S. 89, 93-94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Twombly, 550 U.S. at 556 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (citation omitted). Naturally, the type and specificity of the facts that must be pleaded to render a claim plausible will vary depending on the elements of the cause of action asserted and the circumstances surrounding the litigation. See United States *ex rel.* Snapp, Inc. v. Ford Motor Co., 532 F.3d 496, 502 n.6 (6th Cir. 2008) (noting that the requirement to plead particular facts may be especially important in "cases likely to produce 'sprawling, costly, and hugely time-consuming' litigation"); compare Twombly, 550 U.S. at 564-69 (conducting a Rule 12(b)(6) analysis in a case involving a wide-ranging antitrust conspiracy among local telephone and internet service providers brought under § 1 of the Sherman Act), with Erickson, 551 U.S. at 93-94 (analyzing a prisoner's pro se § 1983 civil rights claim). As the Supreme Court has noted, "facial plausibility" is a "context-specific task," that requires the district court to "draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

Applying the first prong of the Iqbal analysis to the Plaintiff's Complaint, the Court finds some legal conclusions that have been presented as facts. For example, the Complaint provides that "[v]iolations of the TAPA were the proximate cause of Ms. Doaks' injuries" and that the Defendants "[f]ail[ed] to exercise the duty of care owed to . . . Doaks." (D.E. 1, Ex. A Compl., at ¶¶ 23, 26d.) These portions of the Complaint are void of factual substance and will be disregarded in this Court's plausibility analysis.

Under the second prong, the Court determines whether the remaining well-pleaded facts make the Plaintiff's claims plausible. In regard to the TMMA and negligence claims, the Complaint alleges that Doaks suffered several injuries, including "pressure sores, infection, unrelenting pain, and multiple violations of her personal dignity" as well as "mental anguish, extreme physical and mental pain, disfigurement, and suffering and physical injuries." (D.E. 1, Ex. A Compl., at ¶¶ 19, 23.) The Complaint then describes, in a general way, the actions of the Defendants or their agents that might have been below the requisite standard of care for common law negligence or the TMMA, which includes "[f]ailing to properly train and supervise its employees," "[f]ailing to properly staff their facility with sufficient numbers of professional and non-professional staff," "[f]ailing to properly budget the facility to provide adequate staffing and supplies," and "[f]ailure to turn [Doaks] in a timely manner." (Id. at ¶¶ 26b-c, g, 29b.) Assuming all these facts to be true, the Court finds that the Plaintiff has asserted plausible claims for common law negligence and statutory medical malpractice. Both common law negligence and the TMMA require the necessary elements of duty, breach, proximate cause, factual cause, and injury. See Draper v. Westerfield, 181 S.W.3d 283, 290 (Tenn. 2005) (observing that the statutory cause of action for medical malpractice is "but a species of negligence" and that the TMMA "incorporates the common law elements of negligence" with a variation as to what is necessary to prove the standard of care) (quoting Gunter v. Lab. Corp. of Am., 121 S.W.3d 636, 639 (Tenn. 2003)). With the fact that Doaks was a resident of the Defendants' nursing home, the Court can infer that they owed her a duty of reasonable care. See Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73, 79-80 (Tenn. 2001) (holding that "the relationship between a nursing home and its residents . . . gives rise to an affirmative duty owed by the nursing home to exercise reasonable care to protect its residents from all foreseeable harms"). Also, it is plausible

that the alleged actions of the Defendants or its agents fell below the standard of care–whether the standard imposed by the common law or the TMMA–and caused the specified injuries.  (See D.E. 1, Ex. A Compl., at ¶¶ 26, 29.)  Although the well-pleaded facts in the Plaintiff's Complaint are in some respect vague, the Court finds that they are sufficient to "nudg[e]" her claims "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

However, the same cannot be said for the possible TAPA claim.  The TAPA imposes liability on a defendant who subjects disabled or elderly adults to "abuse or neglect."  Tenn. Code. Ann. § 71-6-120(b).  The TAPA defines "abuse or neglect" as the following:

> the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or a situation in which an adult is unable to provide or obtain the services that are necessary to maintain that person's health or welfare.

Tenn. Code Ann. § 71-6-102(1); see also Conley v. Life Care Ctrs. of Am., Inc., 236 S.W.3d 713, 725-28 (Tenn. Ct. App. 2007) (discussing the TAPA).  Within the section of the Plaintiff's Complaint pertaining to the TAPA, the Court finds insufficient factual assertions to establish facial plausibility of a claim.  Although this section states that "[v]iolations of the TAPA were the proximate cause of Ms. Doaks' injuries" and mentions "custodial neglect," the Court considers these to be no more than legal conclusions and therefore disregards them.  The Plaintiff alleges that her injuries were caused by "acts and omissions of the Defendants," (D.E. 1, Ex. A Compl., at 23), but these labels are insufficient to raise a right to relief under the TAPA "above the speculative level."  Twombly, 550 U.S. at 555.  Also, the section regarding the TAPA does not incorporate the subsequent factual allegations pertaining to negligence and medical malpractice.  Thus, the Court agrees that the Plaintiff has failed to state a claim under Tenn. Code Ann. § 71-6-120(b).

II.   Whether the Claims Are Exclusively Covered by the TMMA

The Defendants next argue that the Plaintiff's common law negligence claim should be dismissed because recovery is only available under the TMMA.  In Tennessee, claims for medical malpractice exclusively fall under the TMMA, which means courts must distinguish these claims from those brought pursuant to common law negligence.[2]  "[M]edical malpractice is but a species of negligence and no rigid analytical line separates the two." Gunter, 121 S.W.3d at 639 (citations omitted).  In discussing what claims are covered by the TMMA, the Tennessee Supreme Court has explained that "not all cases involving health or medical entities sound in medical malpractice[, and] the medical malpractice statute may extend to acts of non-physicians, such as nurses, when they are involved in the medical treatment of a patient." Id. at 640 (citations omitted).  The applicable standard applied by the Tennessee courts is as follows:

> when a claim alleges negligent conduct which <u>constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional</u>, the

---

[2]Under the TMMA, a plaintiff must show:
(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
Tenn. Code Ann. § 29-26-115(a).  Additionally, the TMMA provides:
No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.
§ 29-26-115(b).

>medical malpractice statute is applicable. Conversely, when the conduct alleged is not substantially related to the rendition of medical treatment by a medical professional, the medical malpractice statute does not apply.

Id. at 641 (emphasis added); see also Draper, 181 S.W.3d at 291. In reaching this determination, some factors that courts have found relevant include "whether the decision, act, or omission complained of required the assessment of a patient's medical condition and whether the decision, act, or omission required a decision based upon medical science, specialized training or skill." Conley v. Life Care Ctrs. of Am., Inc., 236 S.W.3d 713, 729 (Tenn. Ct. App. 2007).

Initially, the Court should point out that, while the Plaintiff's factual allegations in this case were sufficient to set forth plausible claims, they were expressed in general terms and provided few specifics regarding the circumstances surrounding the alleged negligent actions. As such, the Defendants have requested that this Court make a "'subtle' distinction between medical malpractice and common law negligence" based upon few detailed facts. Draper, 181 S.W.3d at 291 (quoting Gunter, 121 S.W.3d at 639). Assuming all facts in the Complaint to be true and allowing all reasonable inferences, the Court finds that a claim for negligence, which "is not substantially related to the rendition of medical treatment by a medical professional," is plausible. Gunter, 121 S.W.3d at 641. Several of the allegations, such as negligent hiring and failure to supervise employees, plausibly could be either related or unrelated to medical treatment based upon the minimal information on the face of the complaint. (See D.E. 1, Ex. A Compl., at ¶¶ 19, 23.) As such, dismissal under Rule 12(b)(6) is not warranted on these grounds.

## CONCLUSION

For these reasons, the Court **DENIES** the Defendants' motion to dismiss with regard to the

Plaintiff's common law negligence and TMMA claims, but **GRANTS** the motion to dismiss the TAPA claim.

      IT IS SO ORDERED this 8th day of July, 2009.

                                      s/ J. DANIEL BREEN
                                      UNITED STATES DISTRICT JUDGE